### In re AVRUTIS.

(Supreme Court, Appellate Division, First Department. March 20, 1914.)

ATTORNEY AND CLIENT (§ 44*)—MISCONDUCT OF ATTORNEY—DISBARMENT.

Where an attorney, knowing that his client had obtained $11,000 from her husband's life insurance, induced her to turn over $10,000 to him on the false representation that he would invest it on real estate security, so that she would be paid $150 a month profit, but he in fact used it in his

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

own real estate speculations and lost it, he was guilty of professional misconduct justifying disbarment, though he intended and attempted to pay back the money, and did repay a small portion thereof.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. § 44.*]

Disbarment proceedings by the Association of the Bar of the City of New York against Aaron Avrutis, an attorney, for professional misconduct. Application granted.

See, also, 151 App. Div. 937, 135 N. Y. Supp. 1098.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Isidor J. Kresel, of New York City, for petitioner.

Warren Leslie, of New York City, for respondent.

INGRAHAM, P. J. The respondent, who is an attorney of this court, was charged with obtaining from his client, Mrs. Anna Newman, two sums, one of $4,000 and another of $6,000, to invest upon bond and mortgage, that he made no such investment as he represented that he would make and was instructed to make, and that he received the money and appropriated it to his own use, and that the result was the loss of a large portion of the money. The official referee has reported that the charges have been proved that the respondent obtained said money by false representations and appropriated the same to his own use. The respondent admits obtaining the money, but alleges that he received it to invest in a joint venture or speculation, in which he and Mrs. Newman were interested, and that he lost the money as a result of the financial panic of 1907. The official referee has reported that, since he lost the money, the respondent has repaid Mrs. Newman various sums of money, and has endeavored to make good the loss to her.

It appears by the evidence before the official referee that the respondent was engaged almost entirely in real estate operations, that among the clients with whom he had dealings was one Jacob M. Newman, who died in August, 1906, and to whom at the time of his death the respondent was indebted in the sum of $1,500; that said Newman had two policies of insurance upon his life, under which $11,000 was payable to Mrs. Newman. The respondent ascertained that Newman left this insurance, and called upon Mrs. Newman in respect to it, and at the same time paid to her $200 on account of the money that he owed her husband, and Mrs. Newman consulted the respondent about obtaining the insurance money from the insurance companies. In his interview with Mrs. Newman, after he ascertained that the policies of insurance existed, the respondent told her that when she received the $11,660 he would help her to invest it, and he advised her to invest it in second mortgages, stating that it was the best investment after the first, and best for private people, and told her that she would be paid $150 a month profit from the $11,000. Mrs. Newman was a woman without acquaintance with business transactions, and seems to have relied entirely upon the respondent for advice in regard to investment

of this money. Shortly after she received this money, in September, 1906, the respondent applied to her for the sum of $4,000, stating that he would invest it for her, and she delivered that sum to him for that purpose. He deposited the money in a bank in his own name, and used it to pay off judgments and other liens on the property, 77 Columbia street, belonging to one K., upon which there were three prior mortgages aggregating $11,000. He subsequently gave her a bond and mortgage on this property, for $4,700, stating that the $700 was for part of the money which he owed her deceased husband. He received back the mortgage to record, and promised to record it, but he did not record it until July 9, 1908, at which time the prior mortgages on the said property had been increased to $18,000. Subsequently the first mortgage on the property was foreclosed, and Mrs. Newman's mortgage lien thereon was rendered valueless. Mrs. Newman at some time received about $750 on account of this mortgage.

In relation to this charge the respondent's defense was that he had received this $4,000 for investment as he saw fit, and that she relied upon his individual responsibility and written guaranty for interest on the money, and its ultimate payment, and that it was in effect a loan to him personally. But the official referee finds that Mrs. Newman never understood that she was investing her money in a joint venture with the respondent, but that, on the contrary, she believed, and was justified in believing from the statements made to her by him, that she was getting a good mortgage on real estate for the $4,000 she had paid over to him, and was induced to part with the $4,000 by the statements and representations of the respondent that she would receive such security. The official referee says:

"The conclusion must be that she was deceived and misled in the transaction by the respondent, and that the first charge set forth in the petition must be sustained."

As to the second charge, it appears that in October, 1906, after the respondent in September, 1906, had obtained $4,000 of the $11,000 which Mrs. Newman had received from the policies of insurance upon the life of her deceased husband, he applied to Mrs. Newman for an additional $6,000 for investment. To secure this amount, he stated that he had a very good investment of $6,000 on a second mortgage; that the gentleman who wanted the money was sitting in his office and waiting for it; that he had no time to wait; and that it was very important to make the investment, as it was a good proposition; and that if she did not do it right away, the man would get the money somewhere else. Upon this representation Mrs. Newman advanced to the respondent the $6,000 which he received, and deposited to his own account. He gave to Mrs. Newman a receipt, which read:

"Received of Mrs. Anna Newman the sum of $6,000 for investment."

Instead of investing it in second mortgages on real estate, he deposited it to his own account in a bank, and checked it out as he required it. Apparently there was no man in his office waiting to give a second mortgage for the money, and, accepting Mrs. Newman's testimony as to the method by which this $6,000 was obtained, it was

evidently a bald fraud by which he induced his client, by false and fraudulent representations, to give him her money.

In relation to this second charge, the respondent's explanation is the same as of the $4,000 transaction, i. e., that he was to take the money and invest it as he thought best. His idea of investing it seems to have been to take the money and spend it and pay it back to her as he saw fit. However, it appeared that in July, 1907, the respondent gave Mrs. Newman a mortgage for $7,500 on leasehold property that he owned. It appears that on June 1, 1907, the date of the mortgage, there were already three mortgage liens on the property prior and superior to the mortgage given Mrs. Newman totalling $31,500. The prior mortgage was foreclosed and the security of Mrs. Newman was rendered valueless. The official referee reports in regard to this second charge:

"In my judgment it appears by a preponderance of credible testimony that this $6,000 was obtained from Mrs. Newman by false representations made to her by the respondent, and the money converted by him to his own use. The second charge should be sustained."

The official referee's report is clearly sustained by the evidence. Mrs. Newman was a woman unaccustomed to business dealings, knowing nothing of real estate transactions and the security of bond and mortgage, and evidently relied upon the representations and statements of the respondent as to the methods in which her money should be invested. She had received this $11,000 from the insurance company, and the respondent represented to her that, if she would invest the money in second mortgages on real estate, she would receive $150 a month, and would be relieved of the necessity of working for her own support. It is perfectly clear that she understood she was investing the money and not giving it to the respondent for him to use in speculation, that she was investing it, not to make money, but to secure for herself an income for her support, and that the respondent obtained $10,000 out of the $11,000 which she had received from her husband's estate, and that there was really no investment of the money, but the respondent used it for his own purposes.

The fact that he gave to Mrs. Newman mortgages on real estate instead of any agreement to share in the profits of his ventures of itself disposes of his contention that the money was a personal loan to him to be used by him as he desired. To quiet her he gave her these valueless mortgages, keeping them off the record long after they were delivered to her, so that he could manipulate the property without being embarrassed by the record of these mortgages. The testimony that he gave before the official referee as to his arrangement with Mrs. Newman was clearly false, and that fact must be considered in determining the penalty that should follow his professional misconduct. The substantial fact is that he allowed Mrs. Newman, whom he knew to be ignorant of real estate transactions and investment of money, to pay him this $10,000 on representations that he would invest it for her, and that the respondent then used the money for his own purposes and made no investments which gave to her any substantial security for the repayment of the money. The fact that he intended to pay back the money to her, if he made money in his enterprises, and

the fact that the financial panic of 1907 intervened, which swept away his own property out of which he hoped to repay Mrs. Newman, constituted no possible defense. The offense of the respondent consisted in taking substantially all the money that this woman had received for her support, and, upon the representations that he received it for investment, appropriated it to his own use, instead of investing it, and applied it in aid of his own speculations or his personal transactions, with the resulting loss to his client.

That there is here presented a case of the grossest professional misconduct is apparent, and no subsequent attempt to repair the wrong can be admitted as a defense. The respondent must therefore be disbarred; and it is so ordered. All concur.